UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**BRENDA STONE,**

    **Plaintiff,**

 v.

**CARESTAR, INC.,**

    **Defendant.**

Case No. 2:23-cv-3520
Judge Edmund A. Sargus, Jr.
Magistrate Judge Elizabeth P. Deavers

**OPINION AND ORDER**

This matter is before the Court on Defendant CareStar, Inc.'s Motion for Summary Judgment (ECF No. 16). Plaintiff Brenda Stone responded in opposition (ECF Nos. 19, 20) and CareStar replied in support (ECF No. 21). For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** CareStar's Motion for Summary Judgment.

**BACKGROUND**

This case arises out of Defendant CareStar, Inc.'s decision to terminate Plaintiff Brenda Stone's employment after Ms. Stone returned to work from leave taken pursuant to the Family and Medical Leave Act ("FMLA").

 **I.**  **Ms. Stone's Role at CareStar**

CareStar is a regional company that provides case management services to individuals with chronic health conditions, complex healthcare challenges, and disabilities. (ECF No. 16-5, ¶ 2.) CareStar aims to help clients remain safely in their homes or other community settings and live as independently as possible. (*Id.*) CareStar employs licensed professionals, including social workers and registered nurses, to provide care to its clients. (*Id.*)

From November 2004 to October 2022, Ms. Stone worked as a case manager at CareStar. (Stone Dep., ECF No. 14, PageID 96, 141, 7:20–22, 52:8–12.) Ms. Stone is a licensed independent

social worker with a master's degree in clinical social work and a bachelor's degree in psychology. (*Id.*, PageID 97, 8:18–23; ECF No. 20-17.) In her role as case manager, Ms. Stone cared for clients who were part of the Ohio Home Care Waiver program, a program associated with Medicaid. (Stone Dep., ECF No. 14, PageID 98, 9:2–9; Christman Dep., ECF No. 15, PageID 179, 47:21–48:9.) She was responsible for monitoring those clients' health, staying in regular contact with them, ensuring they received proper services, and helping them work with providers. (Stone Dep., ECF No. 14, PageID 98, 9:2–9; Christman Dep., ECF No. 15, PageID 179, 47:3–48:9.)

CareStar contracts with Medicaid to provide services to clients in the Ohio Home Care Waiver program. (ECF No. 16-5, ¶ 3.) To comply with this contract, CareStar requires case managers to follow protocols and guidelines when working with clients. (*Id.* ¶¶ 3–4.) For example, CareStar has rules on how often case managers must contact and visit clients and how detailed those interactions must be. (*Id.*) Case managers must also properly document their communications and attempted communications with clients. (*Id.*)

## II. Ms. Stone's FMLA Leave

In 2022, Ms. Stone's parents experienced serious health concerns. (Stone Dep., ECF No. 14, PageID 108–09, 19:25–20:12.) Ms. Stone's stepfather suffered a series of strokes and became incapacitated, and Ms. Stone's mother was unable to care for him because she also experienced health problems around the same time. (*Id.*) On June 8, 2022, Ms. Stone told her supervisor, Cariel Christman, that her parents were experiencing health issues and that she would likely need to take FMLA leave to care for them. (ECF No. 19-7, ¶ 53.) Ms. Stone also reached out to human resources to inquire about FMLA leave on June 14, 2022. (*Id.* ¶ 55.) Ms. Stone applied for FMLA leave on July 12, 2022, and received approval shortly thereafter. (*Id.* ¶¶ 67–68.) Ms. Stone took FMLA leave from July 25, 2022, to October 14, 2022. (*Id.* ¶¶ 73, 76.)

2

### III. CareStar's Termination of Ms. Stone's Employment

On June 9, 2022, the day after Ms. Stone told Ms. Christman she would likely need to take FMLA leave, Ms. Christman raised concerns about Ms. Stone's performance to the human resources department at CareStar. (ECF No. 16-5, ¶ 17; Christman Dep., ECF No. 15, PageID 199–200, 129:24–130:10.) CareStar memorialized those concerns in a written warning and issued the warning to Ms. Stone on June 17, 2022. (ECF No. 16-2.) The warning identified the following problems: incomplete notes about communications with clients, logging contacts with clients even though the requisite information had not been exchanged, and conducting telephone contacts and home visits on the same day. (*Id.*) This was the second time Ms. Stone had been disciplined in her seventeen years at CareStar. (ECF No. 19-6, PageID 326.) In 2012, Ms. Stone received a written warning for similar conduct, i.e., failing to document client contacts in accordance with CareStar's guidelines. (ECF No. 19-2.)

CareStar discovered more deficiencies with Ms. Stone's performance while she was on FMLA leave and terminated her employment on October 26, 2022, nine days after she returned from leave. (ECF No. 16-5, ¶¶ 22–28; ECF No. 19-7, ¶ 89; Christman Dep., ECF No. 15, PageID 207, 159:9–160:14.) CareStar states that it terminated Ms. Stone primarily due to her untimely, inaccurate, and incomplete client communication notes. (ECF No. 16-4.) But Ms. Stone contends that these errors are common among case managers and can be caused by technological issues. (Stone Dep., ECF No. 14, PageID 113, 24:19–25:6; Christman Dep., ECF No. 15, PageID 202, 138:15–139:9.) CareStar also cited Ms. Stone's failure to (1) document attempts to secure providers for clients, (2) update service plans, and (3) initiate, document, and review health and safety plans as reasons for her termination. (ECF No. 16-4.)

3

CareStar alleges that inaccurate note entries, such as logging client contacts that did not occur or logging client contacts on the wrong date, can jeopardize a client's health and cause CareStar to bill the Ohio Department of Medicaid incorrectly. (ECF No. 16-5, ¶¶ 8–10.) CareStar contends that it could lose its contract with Medicaid for improper billing practices and that it has a "zero-tolerance policy" for case managers who bill Medicaid for services they did not provide, which CareStar argues Ms. Stone did here. (*Id.* ¶¶ 6, 31.)

### IV. Procedural Background

Ms. Stone sued CareStar after receiving a Right to Sue letter from the Equal Employment Opportunity Commission. (ECF No. 1, ¶ 8; ECF No. 1-2.) Her Complaint alleges three causes of action against CareStar. Under Counts I and II, Ms. Stone claims that CareStar's decision to terminate her employment constitutes age discrimination in violation of Section 4112.02 of the Ohio Revised Code and the Age Discrimination in Employment Act ("ADEA"), respectively. (ECF No. 1, ¶¶ 32–54.) Under Count III, Ms. Stone claims that CareStar's decision to terminate her employment constitutes retaliation in violation of the Family and Medical Leave Act. (*Id.* ¶¶ 55–66.)

### STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

## ANALYSIS

### I. Counts I and II: Age Discrimination Under Ohio Law and the ADEA

Ms. Stone alleges that CareStar violated Section 4112.02 of the Ohio Revised Code and the ADEA by discriminating against her on the basis of age. (ECF No. 1, ¶¶ 32–54.) The ADEA and Ohio law prohibit employers from discriminating against employees because of their age with respect to terms of employment. 29 U.S.C. § 623; Ohio Rev. Code § 4112.02. Age discrimination claims under Ohio law are analyzed using the same standards that apply to ADEA claims, so the Court examines Counts I and II together. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 357 (6th Cir. 1998).

A plaintiff may prove an age discrimination claim through direct or indirect evidence. Direct evidence "proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). Absent direct evidence, a plaintiff may use indirect evidence to establish their age discrimination claim through the burden-

shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Kean v. Brinker Int'l, Inc.*, 140 F.4th 759, 773 (6th Cir. 2025) (applying burden-shifting framework to plaintiff's age discrimination claim under the ADEA); *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 469–70 (6th Cir. 2002) (applying burden-shifting framework to plaintiff's age discrimination claim under Ohio law). Here, Ms. Stone relies on indirect evidence to prove her age discrimination claims. Specifically, she argues that because she was 63 years old at the time of CareStar's adverse employment actions, CareStar's decision to replace her with a 31-year-old woman demonstrates age discrimination. (ECF No. 19, PageID 284, 293.) Thus, the Court uses the *McDonnell Douglas* framework to analyze Ms. Stone's age discrimination claims.

Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of age discrimination by showing that (1) she is at least forty years old, (2) she was subject to an adverse employment action, (3) she was qualified for the position, and (4) she was replaced by a significantly younger person. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003) (quoting *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 349, 352–53 (6th Cir. 1997)). If a plaintiff can set forth this *prima facie* case, the burden of production shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action. *Id.* (quoting *Kline*, 128 F.3d at 342). At that point, the plaintiff may rebut the defendant's argument with evidence that the proffered reason is pretext for intentional age discrimination. *Rowan*, 360 F.3d at 547.

The Court begins by analyzing Ms. Stone's *prima facie* case of age discrimination. The parties do not dispute two of the four elements. First, Ms. Stone was over the age of forty and, therefore, a member of the protected class when the alleged age discrimination took place. (Stone Dep., ECF No. 14, PageID 105–06, 16:12–17:2 (explaining that Ms. Stone was either 63 or 64 years of age during the relevant time).) Second, the parties do not dispute that Ms. Stone

6

experienced an adverse employment action when she was terminated by CareStar. (ECF No. 19-7, ¶ 89.)

Without specifically stating that it was doing so, CareStar disputes the third *prima facie* element—whether Ms. Stone was qualified for the position—by arguing that case managers must properly document communications with clients and that Ms. Stone failed to do so. (ECF No. 16, PageID 241–42, 244–47.) At this stage of the analysis, the Court focuses on whether Ms. Stone's objective qualifications show that she was qualified for the position when she was terminated. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575–76 (6th Cir. 2003). That inquiry involves examining Ms. Stone's "education, experience in the relevant industry, and demonstrated possession of the required general skills." *Id.* at 576.

Ms. Stone holds a bachelor's degree in psychology and a master's degree in clinical social work. (Stone Dep., ECF No. 14, PageID 97, 8:18–23; ECF No. 20-17.) When she was terminated, Ms. Stone had seventeen years of experience as a case manager at CareStar and decades of experience as a case worker prior to her employment at CareStar, including at several different medical providers. (Stone Dep., ECF No. 14, PageID 96–98, 7:20–9:1; ECF No. 20-17; ECF No. 20-18.) Ms. Stone's performance reviews at CareStar show that she met expectations in 2016, 2017, 2018, 2019, 2020, and 2021. (ECF No. 20-20, PageID 434; ECF No. 20-21, PageID 439; ECF No. 20-22, PageID 459; ECF No. 20-23, PageID 479; ECF No. 20-24, PageID 492; ECF No. 20-25, PageID 502; ECF No. 20-29, PageID 516.) Before the conduct giving rise to this litigation occurred, Ms. Stone had been disciplined only once by CareStar through a written warning issued more than a decade ago. (ECF No. 19-6, PageID 326.) Indeed, Ms. Christman, who was Ms. Stone's supervisor at the time of her termination, testified that Ms. Stone "met the expectations of the job" and "completed the work that was required of her," including "[e]nsuring the authorization

7

of services, overseeing the services, [and] completing the work on time." (Christman Dep., ECF No. 15, PageID 177, 40:8–41:9.)  Therefore, a reasonable juror could conclude that Ms. Stone was qualified for the case manager position.  *See, e.g.*, *Zellner v. Signature Health Servs. Mansfield LLC*, No. 1:11-CV-2796, 2013 WL 257151, at *3 (N.D. Ohio Jan. 23, 2013) (finding seven years of experience, multiple positive reviews, and accolades from coworkers demonstrated plaintiff was qualified); *Feldmeyer v. BarryStaff, Inc.*, No. 1:16cv954, 2018 WL 1151776, at *6 (S.D. Ohio Mar. 5, 2018) (Barrett, J.) (holding that plaintiff offered sufficient evidence of his qualifications by demonstrating he had seven years of experience and revenue increased during his tenure).  Ms. Stone has made a *prima facie* showing that she was qualified for the position.

The parties dispute the fourth *prima facie* element—whether Ms. Stone was replaced by a person outside the protected class.  CareStar argues that Martha Balint, a 63-year-old woman, replaced Ms. Stone, whereas Ms. Stone contends that Haby Sow, a 31-year-old woman, replaced her.  (ECF No. 16, PageID 253; ECF No. 19, PageID 284, 293.)

Ms. Stone asserts that one of CareStar's interrogatory responses demonstrates that Haby Sow, a 31-year-old woman, replaced her.  (ECF No. 19, PageID 284, 293.)  The interrogatory asked CareStar to identify the individual who filled Ms. Stone's position. (ECF No. 19-6, PageID 329.)  CareStar answered by stating that (1) case manager roles are not directly replaced and (2) Haby Sow was hired through the job posting created on October 26, 2022.  (*Id.*)  Ms. Stone argues that Ms. Sow replaced her because Ms. Sow was hired through the job posting created on the same day that CareStar terminated Ms. Stone.  (ECF No. 19, PageID 284, 293.)

The Court recognizes that CareStar's interrogatory response is somewhat inconsistent with other statements about Ms. Stone's replacement.  Even so, the October 26, 2022 job posting does not state or imply that the person hired will replace Ms. Stone.  (*See* ECF No. 19-12, PageID 359.)

8

Instead, the evidence related to this issue indicates that Ms. Balint replaced Ms. Stone, not Ms. Sow. (Christman Dep., ECF No. 15, PageID 214, 216, 187:3–13, 196:19–197:5; ECF No. 19-9, PageID 344.) Ms. Stone's supervisor at CareStar, Ms. Christman, testified that Ms. Balint (1) ended up with Ms. Stone's position, (2) covered Ms. Stone's geographic area, and (3) worked with Ms. Stone's clients. (Christman Dep., ECF No. 15, PageID 214, 216, 187:3–13, 196:19–197:5.) The notes that Ms. Christman took around the time of Ms. Stone's termination confirm that "Martha [Balint] will backfill Brenda Stone's vacated position." (ECF No. 19-9, PageID 344.) No reasonable trier of fact could find that Ms. Sow replaced Ms. Stone. Therefore, Ms. Stone has failed to set forth a *prima facie* case of age discrimination.

Even assuming that CareStar replaced Ms. Stone with a younger employee, Ms. Stone's age discrimination claims would not survive CareStar's Motion for Summary Judgment. Ms. Stone does not offer evidence of age discrimination aside from claiming that she was replaced by a younger employee. As the Sixth Circuit has explained, "[t]he isolated fact that a younger person eventually replaces an older employee is not enough to permit a rebuttal inference that the replacement was motivated by age discrimination." *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 267 (6th Cir. 1986). When there is no additional evidence of age discrimination beyond the "bare bones" *prima facie* showing of replacement by someone who is arguably substantially younger, there is not sufficient evidence to avoid summary judgment. *Weller v. Titanium Metals Corp.*, 361 F. Supp. 2d 712, 722 (S.D. Ohio 2005) (citing *Peters v. Lincoln Elec. Co.*, 285 F.3d 456 (6th Cir. 2002)).

Accordingly, Defendant CareStar, Inc.'s Motion for Summary Judgment on Counts I and II is **GRANTED**.

9

## II. Count III: Retaliation/Discrimination Under the FMLA

The FMLA is intended to help employees "balance the demands of the workplace with the needs of families." 29 U.S.C. § 2601(b). In relevant part, the FMLA permits an employee to take up to twelve weeks of leave within a twelve-month period to "care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided [by the FMLA]" or "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a). The Sixth Circuit "has recognized two discrete theories of recovery under the FMLA: (1) the so-called 'interference' or 'entitlement' theory arising from § 2615(a)(1), and (2) the 'retaliation' or 'discrimination' theory arising from § 2615(a)(2)." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012).

### A. Interference Under the FMLA

Pursuant to 29 U.S.C. § 2615(a)(1), employers may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA statute]." To demonstrate a *prima facie* case of interference under the FMLA, the plaintiff must show that "(1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled." *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006).

CareStar contends that Ms. Stone's FMLA interference claim must fail because (1) the claim is indistinguishable from Ms. Stone's FMLA retaliation claim, and (2) Ms. Stone did not raise an FMLA interference claim in her Complaint. (ECF No. 16, PageID 251–52; ECF No. 21,

10

PageID 525–26.) The Court agrees. Ms. Stone argues that CareStar interfered with her FMLA leave in multiple ways: failing to inform her of FMLA rights in a timely manner, issuing a disciplinary action three days after she spoke with human resources about taking FMLA leave, creating a disciplinary record for issues that she had already addressed or delegated, and terminating her less than ten days after she returned from FMLA leave. (ECF No. 19, PageID 287–89.) However, Ms. Stone does not explain how her Complaint gives rise to an FMLA interference claim or how her interference arguments are distinct from her FMLA retaliation claim.

A party may not advance a new claim or expand its claims to assert new theories in response to a motion for summary judgment. *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) ("To the extent [plaintiff] seeks to expand its claims to assert new theories, it may not do so in response to summary judgment."); *Tucker v. Union of Needletrades, Indus., & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (explaining that a plaintiff may not raise a new legal claim in response to summary judgment). Raising new claims at the summary judgment stage subjects the defendant to "unfair surprise" and precludes the defendant from investigating those claims during discovery. *Id.*

Ms. Stone raised an FMLA claim in Count III of her Complaint and titled the claim "Retaliation/Discrimination- Violation of the Family Medical Leave Act." (ECF No. 1, Count III.) The Complaint does not include an FMLA interference count, and Ms. Stone does not explain how the allegations in her Complaint give rise to an interference claim or support the interference arguments she makes in response to CareStar's Motion for Summary Judgment. Ms. Stone did not amend or attempt to amend her Complaint to add an FMLA interference claim. Instead, Ms. Stone raised interference arguments for the first time in opposition to CareStar's Motion for

11

Summary Judgment almost two months after discovery closed and more than two years after filing the Complaint. (ECF Nos. 1, 8, 19.)

CareStar argues that even if Ms. Stone had properly raised an FMLA interference claim in her Complaint, there is no cognizable difference between her FMLA interference claim and her FMLA retaliation claim. (ECF No. 17, PageID 251–52; ECF No. 21, PageID 525–26.) The Court agrees. While a plaintiff does not generally waive an interference claim by asserting "general violations of 29 U.S.C. § 2615 that could apply to both interference and retaliation claims," when "the essence of [plaintiff's] claim is retaliation, not interference with his substantive FMLA rights" a district court does not err by "confining its analysis of [plaintiff's] FMLA claim to the retaliation theory of § 2615(a)(2)." *Seeger*, 681 F.3d at 282–83 (quoting *Morris v. Fam. Dollar Stores of Ohio, Inc.*, 320 F. App'x 330, 335 (6th Cir. 2009)).

In *Seeger*, the plaintiff's FMLA leave request was approved and he received all the FMLA leave to which he was entitled. *Id.* at 283. In addition, the plaintiff was reinstated to his former position upon returning from leave and resumed his normal work routine until he was terminated. *Id.* For these reasons, the Sixth Circuit approved the district court's conclusion that the plaintiff's FMLA claim sounded in retaliation (not interference) and its decision to analyze the claim accordingly. *Id.* at 282–83. Like the plaintiff in *Seeger*, Ms. Stone received all the FMLA leave to which she was entitled, her FMLA leave request was approved, she was reinstated to her former position upon returning, and she resumed her normal work routine until she was terminated. (Stone Dep., ECF No. 14, PageID 97–98, 109–10, 136–37, 8:25–9:1, 20:17–21:3, 47:2–48:9; ECF No. 16-5, ¶ 21.) As such, the essence of Ms. Stone's claim is that CareStar retaliated against her for taking FMLA leave, not that CareStar interfered with her right to take FMLA leave.

### B. Retaliation/Discrimination Under the FMLA

Pursuant to 29 U.S.C. § 2615(a)(2), an employer may not retaliate or discriminate against an employee for taking FMLA leave. As with age discrimination claims, courts use the *McDonnell Douglas* framework to analyze FMLA retaliation claims that are supported by indirect or circumstantial evidence. *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). Here, Ms. Stone does not provide direct evidence of discrimination, so *McDonnell Douglas* applies. Under this framework, the plaintiff must first establish a *prima facie* case of FMLA retaliation. *Id.* Then, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. *Id.* Finally, the burden of production shifts back to the plaintiff to show that the defendant's justification is pretext for discrimination. *Id.*

Ms. Stone relies on indirect evidence to prove her FMLA retaliation claim. She argues that CareStar terminated her employment because she took FMLA leave and that (1) the temporal proximity between her FMLA leave and her termination and (2) CareStar's failure to terminate case managers who engaged in similar conduct demonstrate CareStar's retaliatory intent. (ECF No. 19, PageID 289–92.) Therefore, the Court analyzes Ms. Stone's FMLA retaliation claim under the *McDonnell Douglas* framework.

#### i. *Prima Facie* Case

To establish a *prima facie* case of retaliation under the FMLA, Ms. Stone must show that (1) she engaged in an activity protected by the FMLA, (2) CareStar knew that she exercised her rights under the FMLA, (3) Ms. Stone suffered an adverse employment action, and (4) there was a causal connection between the protected activity and the adverse employment action. *See Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 381 (6th Cir. 2017). Here, CareStar does not contest the first three elements of Ms. Stone's *prima facie* case. First, by taking FMLA leave to

13

care for her parents who had serious health conditions, Ms. Stone engaged in activity protected by the FMLA. (ECF No. 20-7.) Second, CareStar knew that Ms. Stone exercised her rights under the FMLA because it approved her request for FMLA leave. (*Id.*) Third, Ms. Stone suffered an adverse employment action when she was terminated from CareStar. (ECF No. 19-7, ¶ 89.)

The parties dispute whether Ms. Stone has established the fourth *prima facie* element—whether a causal connection exists between Ms. Stone's FMLA leave and her termination. The "burden of proof at the *prima facie* stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Seeger*, 681 F.3d at 283 (quoting *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)). Temporal proximity coupled with other indicia of retaliatory conduct can establish a causal connection. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006).

Here, Ms. Stone has demonstrated a close temporal proximity between her FMLA leave and CareStar's adverse employment actions. Ms. Stone spoke with her supervisor, Ms. Christman, about taking FMLA leave on June 8, 2022, and Ms. Christman contacted human resources to discuss concerns about Ms. Stone's performance the next day. (ECF No. 19-7, ¶ 53; ECF No. 16-5, ¶ 17; ECF No. 20-26.) Ms. Stone spoke with human resources about FMLA leave on June 14, 2022, and Ms. Stone received her first disciplinary write-up in over a decade three days later. (ECF No. 19-7, ¶ 55; ECF No. 19-6, PageID 326.) Ms. Stone returned from FMLA leave on October 17, 2022, and was terminated from CareStar nine days later. (ECF No. 19-7, ¶¶ 76, 89.)

In addition to temporal proximity, Ms. Stone supports her causal connection argument with evidence that CareStar terminated her over mistakes for which it did not terminate other case managers. (ECF No. 19, PageID 279, 289–91; Stone Dep., ECF No. 14, PageID 113–14, 24:19–

14

25:6.) For example, Ms. Sow was placed on performance improvement plans for untimely note entries, but CareStar did not terminate her for that conduct. (ECF Nos. 20-1, 20-30.) Similarly, Ms. Stone received a written warning years ago for failing to complete communication notes within established guidelines, but CareStar did not terminate her for that conduct. (ECF No. 20-11, PageID 410.) Further, Ms. Stone testified that she knew other case managers logged inaccurate and blank note entries because she saw those entries when covering for them during an absence or after receiving their cases through a transfer. (Stone Dep., ECF No. 14, PageID 113–15, 24:23–25:6, 26:5–10.) Viewing the evidence in the light most favorable to Ms. Stone, the Court concludes that Ms. Stone has put forth credible evidence from which a reasonable juror could deduce a causal connection between her FMLA leave and termination. Therefore, the Court moves to the next step of the *McDonnell Douglas* analysis.

## ii. Legitimate, Non-Discriminatory Reason

The burden of production shifts to CareStar to establish a legitimate, non-discriminatory justification for its decision to terminate Ms. Stone. The Sixth Circuit has emphasized that "the defendant need not *prove* a nondiscriminatory reason" for the adverse employment action taken against the plaintiff, "but need merely *articulate* a valid rationale." *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 514 (1993)) (emphases in original). Here, CareStar has come forward with a legitimate, nondiscriminatory reason for its adverse employment actions. CareStar states that it terminated Ms. Stone because her note entries were inaccurate and untimely, which resulted in Ms. Stone reporting contacts with clients on dates that no contact occurred. (*See, e.g.*, ECF No. 16, PageID 250; ECF No. 16-4; ECF No. 16-5, ¶¶ 16, 20, 27.) CareStar explains that these mistakes can jeopardize a client's health and cause CareStar to bill the Ohio Department of Medicaid incorrectly. (*See, e.g.*, ECF No. 16, PageID 250–51; ECF

15

No. 16-5, ¶¶ 8–10.) CareStar relies on business from Medicaid for 90% of its revenue, and CareStar could lose its contract with the Ohio Department of Medicaid or be terminated from the Medicaid Program for improper billing practices. (ECF No. 16, PageID 241; ECF No. 16-5, ¶¶ 6–7.) Accordingly, CareStar has articulated a legitimate, nondiscriminatory reason for its adverse employment actions.

### iii. Pretext

The burden of production now shifts to Ms. Stone to offer evidence from which a reasonable jury could conclude that CareStar's reason for terminating her is pretext for retaliation. The Sixth Circuit has recognized three primary ways for a plaintiff to demonstrate pretext; showing that the defendant's reasons "(1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action." *Seeger*, 681 F.3d at 285 (citing *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). Ms. Stone uses the second and third methods to argue that CareStar's rationale for her termination is pretextual. (ECF No. 19, PageID 292.)

Under the second showing of pretext, a "plaintiff attempts to indict the credibility of [her] employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009) (emphasis in original). Under the third showing of pretext, a plaintiff shows that the defendant's reason for taking the adverse action is insufficient to motivate its action, usually by offering "evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Id.*

16

Ms. Stone argues that the close temporal proximity between her FMLA leave and CareStar's adverse employment actions coupled with CareStar's failure to discipline other case managers for similar conduct creates genuine issues as to whether CareStar's justification was its true motivation and warranted termination. (ECF No. 19, PageID 292.) The Court agrees. The close timing in this case supports Ms. Stone's position. As discussed in Section II.B.i, Ms. Christman contacted human resources to discuss concerns about Ms. Stone's performance one day after discussing FMLA leave with Ms. Stone, Ms. Stone received her first disciplinary write-up in over a decade three days after discussing FMLA leave with human resources, and Ms. Stone was terminated from CareStar nine days after returning from FMLA leave.

CareStar argues that Ms. Stone cannot prove pretext because temporal proximity is insufficient, by itself, to overcome its legitimate, nondiscriminatory reason for terminating her. (ECF No. 16, PageID 249; ECF No. 21, PageID 524; ECF No. 16-5, ¶¶ 11, 29, 31.) But as discussed in Section II.B.i, Ms. Stone offers additional evidence in support of her pretext argument, namely, that CareStar did not terminate case managers for similar conduct in the past. In response, CareStar claims that it terminated thirteen different case managers for similar conduct (without providing names of the case managers or dates of the terminations), most of whom were younger than Ms. Stone and had not taken leave around the time that they were terminated. (ECF No. 16, PageID 247–48; ECF No. 21, PageID 524; ECF No. 16-5, ¶ 30.) Ms. Christman testified that she terminated one employee for conduct similar to that of Ms. Stone, and that the employee was over the age of forty and had not taken FMLA leave. (Christman Dep., ECF No. 15, PageID 216, 195:3–196:1.) The parties' contradictory positions create genuine disputes of material fact.

Finally, CareStar argues that the honest belief rule defeats Ms. Stone's pretext argument and protects its decision to terminate Ms. Stone. (ECF No. 16, PageID 249–50; ECF No. 21,

17

PageID 528–29.) Under the honest belief rule, "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001); *see also Seeger*, 681 F.3d at 285–87 (applying the "honest belief" rule to FMLA retaliation). This rule does not shield CareStar from the genuine issues of material fact here. The parties dispute whether CareStar honestly believed its proffered reason for disciplining and terminating Ms. Stone, not whether the proffered reason was correct or incorrect. If, for example, the parties agreed that CareStar terminated Ms. Stone due to inaccurate client contact note entries and disputed whether those entries were truly inaccurate, the honest belief rule would apply. But those are not the facts of this case. Instead, as discussed throughout this opinion, the parties dispute (1) whether CareStar's purported rationale for terminating Ms. Stone is sincere and (2) whether CareStar truly believed that Ms. Stone's conduct warranted termination. Genuine disputes of material fact exist with respect to these issues. Therefore, the honest belief rule does not protect CareStar's decision to terminate Ms. Stone or entitle CareStar to summary judgment on Ms. Stone's FMLA retaliation claim because the rule does not apply here.

Ms. Stone has produced evidence sufficient to raise a genuine dispute over whether CareStar's proffered reason for terminating her is mere pretext for retaliation. Accordingly, Defendant CareStar, Inc.'s Motion for Summary Judgment on Count III is **DENIED**.

## CONCLUSION

For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant CareStar, Inc.'s Motion for Summary Judgment (ECF No. 16).  Counts I and II are **DISMISSED**, while Count III remains.

This case remains open.

**IT IS SO ORDERED.**

**9/23/2025**                             **s/Edmund A. Sargus, Jr.**
**DATE**                                  **EDMUND A. SARGUS, JR.**
                                                **UNITED STATES DISTRICT JUDGE**